THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
~~WESTERN~~ Northern DIVISION

No. 2:02CV-1-BO(1)

FILED
JAN 10 2002
DAVID W. DANIEL, CLERK
US DISTRICT COURT, EDNC
BY _____ DEP. CLERK

MARY ELIZABETH STEWART,

    Plaintiff,

v.

ROANOKE ISLAND HISTORICAL
ASSOCIATION, INC.,
*Serve*: Thomas L. White, Jr., Esq.
    Registered Agent
    1409 Highway 64/264
    Manteo, NC 27954

    Defendant.

**COMPLAINT**
Rule 3, F.R.Civ.P.

Plaintiff, Mary Elizabeth Stewart ("Ms. Stewart" or "Plaintiff"), by counsel, states for her Complaint as follows:

**Preliminary Statement**

1. This is an action by Plaintiff against Roanoke Island Historical Association, Inc. ("RIHA" or "Defendant") for compensatory and punitive damages, equitable relief pursuant to Title VII of the Civil Rights Act of 1964 and other applicable law, and declaratory and injunctive relief for sexual harassment, gender discrimination, retaliation, pregnancy discrimination, defamation, wrongful discharge, breach of contract, tortious interference with contractual relations, fraud, invasion of privacy, and unlawful failure to pay earned wages.

## Jurisdiction and Venue

2. This Court has jurisdiction over the subject matter of this action pursuant to 42 U.S.C. § 2000e-5(f) and 28 U.S.C. § 1331. This Court has jurisdiction over Ms. Stewart's North Carolina common law claims pursuant to 28 U.S.C. § 1367.

3. This Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332. Ms. Stewart is a citizen and domiciliary of the state of Georgia. Upon information and belief, Defendant RIHA is a corporation incorporated under the laws of the state of North Carolina and is a citizen and domiciliary of the state of North Carolina. The matter in controversy, exclusive of interest and costs, exceeds the sum of seventy-five thousand dollars ($75,000).

4. Defendant RIHA conducts business within Dare County, North Carolina and venue lies within this judicial district and division, since actions complained herein occurred within the Eastern District of North Carolina.

5. Defendant RIHA is an employer subject to Title VII of the Civil Rights Act of 1964, as amended.

## Administrative Prerequisites

6. Ms. Stewart timely filed a charge of discrimination (Charge No. 141A1C538) against Defendant RIHA with the Equal Employment Opportunity Commission. By letter dated October 12, 2001, the EEOC issued a Notice of right to sue to Plaintiff.

7. Ms. Stewart has complied fully with all prerequisites to jurisdiction in this Court under Title VII and has timely filed suit within 90 days of her receipt of the EEOC's Notice of right to sue.

## Statement of Facts

8. Ms. Stewart was employed by RIHA as the production manager/professional theatre workshop coordinator from about April 1999 until on or about February 2, 2001. She previously had worked for RIHA as a seasonal employee.

9. RIHA produces and presents the annual "The Lost Colony" theatrical play in the Manteo area.

10. In or about May 1999, a male employee reported to Ms. Stewart that a senior RIHA manager, William Ivey Long, had propositioned him to participate in homosexual activities with another man in the presence of Mr. Long and a member of RIHA's Board of Directors (the "Board"), Mr. B. The employee reported that Mr. Long had indicated that Mr. B would be willing to contribute funds to RIHA for a project if the employee would perform homosexual acts in Mr. B's presence. The employee reported that he had agreed to do so because he felt that his job with RIHA would be jeopardized if he did not. The employee reported that he performed the homosexual acts as directed by Mr. Long while Mr. B, the RIHA Board member, watched and masturbated.

11. The employee also complained to Stewart that prior to this incident, Mr. Long had asked him to find young boys with whom Mr. Long could engage in homosexual activity. Mr. Long had also invited this employee to Mr. Long's home to engage in homosexual activities with other RIHA employees.

12. The employee also complained to Ms. Stewart that, while supposedly photographing him for RIHA's souvenir program, Mr. Long claimed he was dissatisfied with the employee's physical appearance in his costume and performed homosexual oral sex on him so his penis would be erect for the photographs.

13. The employee also complained that Mr. Long had also told him that he supposedly was working on a book of photographs to be published and invited the employee to a Board member's hotel to photograph the employee engaging in homosexual acts with another man.

14. The employee asked Ms. Stewart not to start a formal investigation of his complaint because he feared that Mr. Long and the Board member, Mr. B, would retaliate against Ms. Stewart and himself.

15. In or about July 1999, Mr. Long took photographs of various RIHA employees, ostensibly for a "Men of The Lost Colony" calendar. Mr. Long instructed an employee to solicit another RIHA employee to be photographed for the calendar. Mr. Long photographed the second employee while the latter was standing in the water in swimming trunks, but complained that the employee's trunks were visible through the water. Mr. Long instructed the employee to remove his swim trunks, ostensibly so they would not be seen in the photograph, and assured the employee that his private parts would not be visible in the photographs. Nevertheless, Mr. Long produced photographs in which the employee's penis was clearly visible.

16. Sometime thereafter, a RIHA employee reported to Dr. Patricia Salgado, RIHA's then-chief executive officer, that sexually revealing and inappropriate photographs had been taken of RIHA employees and that, at Mr. Long's request, a RIHA employee was soliciting other RIHA employees to participate in homosexual sex acts with Mr. Long. Upon information and belief, Dr. Salgado questioned the employee about these allegations; the employee reported to Dr. Salgado the incidents he had previously reported to Ms. Stewart.

4

17. Upon information and belief, Dr. Salgado reported these allegations to the executive committee of the Board, but RIHA took no action against Mr. Long or the Board member, Mr. B.

18. In or about April 2000, Mr. Long and his assistant sexually propositioned Plaintiff's husband, Ty Stewart, who was employed by RIHA as a technical director. Mr. Long's assistant offered to pay Mr. Stewart money if he would allow him to perform oral sex on Mr. Stewart in Mr. Long's presence. The assistant told Mr. Stewart that it would further his career with RIHA if he agreed. Mr. Stewart refused and reported this incident to Plaintiff, who promptly complained to Dr. Salgado. On other occasions, both before and after this incident, Mr. Long made similar sexual propositions to other male employees.

19. Ms. Stewart reported the sexual harassment allegations described above to Ellen Newbold and Chris Seawell, both of whom were members of the RIHA Board. Ms. Stewart also showed Ms. Newbold and Mr. Seawell pictures that Mr. Long had taken of a RIHA employee engaging in homosexual activity. Upon information and belief, RIHA failed to investigate these allegations and took no action against Mr. Long or anyone else.

20. Mr. Long's pervasive inappropriate sexual propositions and sexual conduct with RIHA employees created a sexually hostile work environment for Plaintiff and other RIHA employees.

21. RIHA failed to implement an effective program to prevent workplace harassment, and failed to take prompt and effective remedial action to stop the harassment and discipline those responsible for it.

5

22. The hostile work environment that RIHA permitted to exist, as well as RIHA's failure to take prompt and effective remedial action to stop the harassment and discipline those responsible for adversely affected Ms. Stewart's employment.

23. RIHA had no effective policy or practice to stop or address sex or gender-based harassment or retaliation because of an employee's involvement in sexual harassment complaints.

24. Ms. Stewart suffered emotionally from the hostile work environment as well as from RIHA's retaliation for her opposing illegal workplace harassment and for engaging in legally protected activities in an effort to prevent and stop the harassment.

25. RIHA's conduct as outlined above has caused Ms. Stewart humiliation, emotional distress and damages, as well as loss of income and related benefits, and loss of her job.

26. In or about August 2000, Dr. Salgado resigned from her position as CEO. Upon information and belief, she resigned partly in protest of the Board's condonation of a sexually hostile work environment and failure to take action against Mr. Long and others responsible for creating a hostile work environment.

27. After Dr. Salgado's resignation, certain RIHA employees asked Ms. Stewart to arrange a meeting with the personnel committee of the Board so they could voice their complaints about the sexually hostile work environment at RIHA.

28. Ms. Stewart arranged with Deloris Harrell, vice-chair of the Board and chair of the Board's personnel committee to hold a meeting on or about September 11, 2000 with RIHA employees, Ms. Harrell, and Ms. Newbold to discuss the employee's complaints.

29. At this meeting, Ms. Stewart repeated her complaints about the sexually hostile work environment and a pattern and practice at RIHA of tolerating a sexually hostile and

offensive work environment in which offensive homosexual activity flourished and solicitation of RIHA employees to engage in such conduct was a regular, ongoing practice. Ms. Stewart complained that RIHA was being jeopardized by this ongoing misconduct and the Board's failure to take remedial action. Mr. Long's sexually offensive and abusive behavior was discussed extensively at this meeting.

30. Upon information and belief, neither Mrs. Harrell nor Ms. Newbold took any effective action in response to the complaints of Ms. Stewart and the other employees. Instead, the Board renewed Mr. Long's employment contract.

31. Meanwhile, Mrs. Harrell and Ms. Newbold requested that Plaintiff and other staff members furnish them with descriptions of their jobs. At the time of the September 2000 meeting, Ms. Stewart was pregnant. Ms. Newbold and Ms. Harrell interrogated Ms. Stewart regarding when she was due to give birth, whether she intended to return to work after she had her baby, and if so, when she expected to return to work. No other employees were questioned about their employment intentions.

32. After Plaintiff complained to the Board as outlined above, RIHA's Board claimed that it had created new job descriptions for certain jobs, including that of executive manager (the former CEO position that Dr. Salgado had held), director and "executive production coordinator."

33. RIHA falsely misrepresented to Ms. Stewart that her position as production manager had been eliminated and was being replaced with a new position with different duties, that of "executive production coordinator." In fact, however, the job description and duties for the "executive production coordinator" were identical to those Ms. Stewart had submitted for her production manager job. Only the job title had been changed.

7

34. On or about September 25, 2000, Ms. Newbold and Ms. Harrell met with RIHA staff members, including Ms. Stewart. Ms. Newbold told Ms. Stewart and the others that a search committee comprised of members of the Board had been formed to recruit candidates for the supposedly new positions and that Ms. Stewart would have to re-apply for her old job and be interviewed by the search committee if she was interested.

35. The supposedly "new" job was the same as Ms. Stewart's current job. No other RIHA employee was required to reapply for his or her current job.

36. When another employee asked why RIHA was requiring Ms. Stewart to reapply for her job, she was told that Ms. Stewart had mishandled a personnel decision and that the staff felt that Ms. Stewart had thereby caused problems. A board member made the same statement at a RIHA staff meeting in or about October 2000.

37. Ms. Stewart had not mishandled any personnel decisions, and had never been informed that she had done so. Nor had RIHA ever informed her that it was dissatisfied in any way with her job performance. On the contrary, Ms. Stewart had always been told by RIHA that she was performing her duties in an excellent manner. As well, other RIHA staff members were satisfied with Ms. Stewart's performance. When Ms. Stewart asked why she was being required to reapply for her job, she was never told that it had anything to do with her job performance. Rather, she was told that it was because her job had been eliminated and the Board supposedly had created a new job.

38. The RIHA Board purported to establish an application period for anyone interested in applying for Ms. Stewart's job. The Board also arranged to conduct interviews of all those who applied for the job. Ms. Stewart timely applied to RIHA for her job.

39. Upon information and belief, in or about November, 2000, RIHA hired Rhoda Dresken to replace Ms. Stewart even before the application period had closed and before the search committee had conducted any applicant interviews.

40. In January 2001, Ms. Stewart was interviewed by the search committee for the position of "executive production coordinator." The interview was a sham. No one on the selection committee had any previous theatrical training or experience. Nor were they familiar with the duties of the job. Instead of conducting a legitimate job interview, the committee repeatedly discussed subjects that had nothing to do with the job and questioned Ms. Stewart regarding her pregnancy and the recent birth of her child. Board members also questioned Ms. Stewart as to whether she was breastfeeding her baby. One Board member made crude remarks about breastfeeding.

41. Ms. Stewart was subsequently notified that she had not been selected for the job. She was terminated effective February 2, 2001.

42. RIHA improperly disclosed confidential information from Ms. Stewart's personnel file, including but not limited to the purported reasons for her termination, to various other persons who had no legitimate reason to receive such information.

43. During her employment, Ms. Stewart had accrued over 1200 hours of "compensatory time." In connection with her termination, Ms. Stewart promptly and repeatedly requested payment for her accrued, but unused compensatory time. RIHA refused to pay her for such time. Upon information and belief, other former employees had in the past received payment for their unused compensatory time upon the termination of their employment.

44. In or about March and April, 2001, Rhoda Dresken, Ms. Stewart's replacement, told others, including but not limited to Paul Charon, that Ms. Stewart was fired because as a 24-

year-old, she was too young and too inexperienced to run the production and that Ms. Stewart was fired because she was loyal to Dr. Salgado and not the Board of Directors. These statements were false and defamatory.

45. In or about mid-April, 2001, Johnny Walker, a RIHA manager, told others, including but not limited to Jon Bender, that Ms. Stewart was fired because a 23-year-old [sic] is too young and too inexperienced to run the production and that Ms. Stewart was fired because she was loyal to Dr. Salgado and not the Board of Directors. These statements were false and defamatory.

46. As a result of Defendant's wrongful conduct as set forth above, Ms. Stewart was unable to find another job in Dare County. Ms. Stewart suffered damages from, inter alia, lost income, the value of lost benefits, damage to her professional reputation and from having to relocate to Georgia in order to obtain another job.

47. Defendant's actions as described above were willful, wanton, malicious or taken with a conscious or reckless indifference to and disregard of Ms. Stewart's rights under federal and state law, entitling her to an award of punitive damages. In addition to the damages set forth in the preceding paragraph, Ms. Stewart has suffered and continues to suffer severe emotional distress and damages as a result of Defendants' actions.

### Count I - Sexual Harassment - Hostile Work Environment

48. Plaintiff hereby incorporates all previous allegations as if set forth fully herein.

49. The effect of the practices described above and the condonation of such practices by RIHA has been to create a sexually hostile work environment in violation of Title VII and applicable North Carolina law.

50. RIHA and its Board were aware of the practices described above and did nothing to prevent or stop them. RIHA and the Board condoned and tolerated the existence of a sexually offensive and hostile work environment.

51. RIHA's conduct resulted in Plaintiff's physical and emotional distress, loss of her employment, loss of income and benefits, and other damages.

WHEREFORE, Plaintiff prays that the Court issue a declaration that RIHA's conduct as outlined above is in violation of Title VII of the Civil Rights Act of 1964, as amended; issue a permanent injunction enjoining Defendant RIHA from maintaining a sexually hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended; award Plaintiff compensatory damages against RIHA in the amount of Two Hundred Thousand Dollars ($200,000); award Plaintiff punitive damages against RIHA in the amount of Two Hundred Thousand Dollars ($200,000); award Plaintiff equitable relief including but not limited to reinstatement, backpay with appropriate interest and benefits; award Plaintiff her incidental and consequential damages; award plaintiff the costs of this action, including her reasonable attorneys' fees; and award such additional relief as the Court deems appropriate.

## Count II - Retaliation

52. Plaintiff hereby incorporates all previous allegations as if set forth fully herein.

53. By complaining to RIHA and the Board regarding the sexually hostile work environment at RIHA and engaging in related activity, Ms. Stewart engaged in activities that were legally protected under Title VII. Because she had engaged in such activities, RIHA fraudulently claimed that it had eliminated her job, forced her to engage in a sham application process to retain her job, and wrongfully discharged her. RIHA thereby unlawfully retaliated against Ms. Stewart.

54. As a result of RIHA's conduct as outlined above, Ms. Stewart suffered from loss of employment, loss of income and benefits, emotional distress, and other damages.

WHEREFORE, Plaintiff prays that the Court issue a permanent injunction enjoining Defendant RIHA from continuing or maintaining the policy, practice, and custom of denying, abridging, withholding or conditioning the rights of employees for asserting rights secured by Title VII of the Civil Rights Act of 1964, as amended; enter a declaratory judgment that RIHA's acts and practices complained of by Plaintiff herein are in violation of Title VII of the Civil Rights Act of 1964, as amended; award Plaintiff equitable relief including but not limited to reinstatement, back pay and lost benefits with appropriate interest, award Plaintiff compensatory damages against RIHA in the amount of Two Hundred Thousand Dollars ($200,000); award Plaintiff punitive damages against RIHA for Two Hundred Thousand Dollars ($200,000); award Plaintiff her incidental and consequential damages; award plaintiff the costs of this action, including reasonable attorneys' fees; and award such additional relief as the Court deems appropriate.

## Count III - Sexual Discrimination

55. Plaintiff hereby incorporates all previous allegations as if set forth fully herein.

56. By fraudulently eliminating her position, forcing her to engage in a sham application process to retain her job, and wrongfully discharging her, RIHA took adverse employment action against Ms. Stewart due to her pregnancy in violation of Title VII of the Civil Rights Act of 1964.

57. Similarly situated employees who were not pregnant were not required to reapply for their positions.

58. As a result, Ms. Stewart suffered from loss of employment, loss of income and benefits, emotional distress, and other damages.

WHEREFORE, Plaintiff prays that the Court issue a declaration that RIHA's conduct as outlined above is in violation of Title VII of the Civil Rights Act of 1964, as amended; issue a permanent injunction enjoining Defendant RIHA from discriminating against her or other employees on account of pregnancy in violation of Title VII of the Civil Rights Act of 1964, as amended; award Plaintiff compensatory damages against RIHA in the amount of Two Hundred Thousand Dollars ($200,000); award Plaintiff punitive damages against RIHA in the amount of Two Hundred Thousand Dollars ($200,000); award Plaintiff equitable relief including but not limited to reinstatement, backpay with appropriate interest and benefits; award Plaintiff her incidental and consequential damages; award plaintiff the costs of this action, including her reasonable attorneys' fees; and award such additional relief as the Court deems appropriate.

### .Count IV - Wrongful Discharge in Violation of Public Policy

59. Plaintiff hereby incorporates all previous allegations as if set forth fully herein.

60. The North Carolina Equal Employment Practices Act, § 143-422.1 et seq., provides that discrimination against employees on the basis of sex is against the public policy of North Carolina.

61. Ms. Stewart opposed RIHA's policy and practice of engaging in sexual discrimination and condoning a sexually hostile work environment. In retaliation for Ms. Stewart's protected activity, RIHA took adverse employment actions against her by eliminating her job, forcing her to engage in a sham application process to retain her job, and wrongfully discharging her.

62. As a result, Ms. Stewart suffered from loss of employment, loss of income and benefits, emotional distress, and other damages.

WHEREFORE, Plaintiff prays that the Court order Plaintiff's immediate reinstatement and award Plaintiff damages in an amount to be determined at trial for lost income and benefits, other compensatory and punitive damages, including but not limited to incidental and consequential damages, and Plaintiff's costs of this action, including reasonable attorneys' fees; and such additional relief as the Court deems appropriate.

### Count V - Breach of Employment Contract

63. Plaintiff hereby incorporates all previous allegations as if set forth fully herein.

64. At or about the time Plaintiff accepted employment with RIHA, RIHA furnished her with a copy of RIHA's personnel policies and procedures.

65. These written policies and procedures, which RIHA confirmed from time to time, constituted a contract of employment between Plaintiff and RIHA.

66. At all relevant times, Plaintiff fully and satisfactorily performed all of her duties under her employment contract with RIHA.

67. By eliminating her job, fraudulently requiring her to reapply to retain her old job wrongfully discharging her, and refusing to pay Plaintiff for her accrued compensatory time, RIHA breached its contract with Plaintiff.

68. As a result of RIHA's conduct as set forth above, Plaintiff has incurred damages.

WHEREFORE, Plaintiff prays that the Court award Plaintiff damages for lost wages and benefits, as well as incidental damages, all in an amount to be determined at trial, as well as Plaintiff's costs and reasonable attorneys' fees in this action, and such additional relief as the Court deems appropriate.

## Count VI - Defamation

69. Plaintiff hereby incorporates all previous allegations as if set forth fully herein.

70. The statements regarding Ms. Stewart made by Ms. Harrell, Mr. Walker, and Ms. Dresken were false and defamatory per se in that they were false statements imputing Plaintiff's unfitness to perform her job and necessarily prejudiced her in her business, trade or profession.

71. Those who made the false and defamatory statements knew at the time of the statements that such statements were false, and they made such statements with actual malice and with the intent to injure Plaintiff's reputation.

72. Ms. Harrell, Mr. Walker and Ms. Dresken were RIHA's agents, employees and/or servants at the time they made the defamatory statements regarding Plaintiff. Accordingly, RIHA is vicariously liable to Ms. Stewart for all damages resulting from these defamatory statements.

73. RIHA is liable for the foregoing defamatory statements and each and every republication thereof, which republications are, upon information and belief, ongoing.

74. As a result of the conduct outlined above, Plaintiff has suffered damages, including but not limited to loss of reputation, embarrassment, humiliation, mental and physical suffering and loss of income and benefits.

WHEREFORE, Plaintiff prays that the Court award Plaintiff compensatory and punitive damages in an amount to be determined at trial, as well as her costs and reasonable attorneys' fees and such additional relief as the Court deems appropriate.

## Count VII - Fraud

75. Plaintiff hereby incorporates all previous allegations as if set forth fully herein.

76. Defendant, acting through the Board's "search committee," represented to Ms. Stewart that her job was being eliminated and replaced with a different job, and that she would be required to reapply if she wanted to be considered for the "new" job.

77. In fact, the purportedly "new" job was the same as Ms. Stewart's existing job.

78. Defendant, acting through the Board's "search committee," deliberately misled Plaintiff into believing that her job was being eliminated and replaced with a different job. Defendant, acting through the Board's "search committee," engaged in a fraudulent and sham process whereby it took Plaintiff's job description and gave it a new title, then falsely claimed it was a different job. Thereafter, RIHA engaged in a fraudulent and sham application and interview process, after which RIHA told Plaintiff that she had not been selected for the purportedly "new" job. In fact, the purportedly "new" job already had been filled long before the interview process commenced.

79. Defendant knew at the time these representations of fact were made that they were false. RIHA caused these false representations of fact to be made with the expectation that Plaintiff would rely on them to her detriment.

80. Defendant devised this fraudulent scheme and made these false representations of fact in order to conceal from Plaintiff the fact that RIHA was wrongfully discharging her in retaliation for having engaged in legally protected activity as outlined above.

81. Ms. Stewart relied on RIHA's false and fraudulent misrepresentations and sustained damages as a result.

WHEREFORE, Plaintiff prays that the Court award Plaintiff compensatory and punitive damages in an amount to be determined at trial, and as well as her costs and reasonable attorneys' fees and such additional relief as the Court deems appropriate.

### Count VIII - Violation of North Carolina Wage and Hour Act

82. Plaintiff hereby incorporates all previous allegations as if set forth fully herein.

83. In violation of § 95-25.7, RIHA refused to pay Ms. Stewart wages for her accrued compensatory time upon the termination of her employment or thereafter.

WHEREFORE, Plaintiff demands judgment against RIHA for damages in the amount of her unpaid compensatory time, plus interest from February 2, 2001 at the applicable rate as well as liquidated damages in the amount of her unpaid compensatory time, plus interest from February 2, 2001 at the applicable rate; reasonable attorneys' fees, costs and fees; and such additional relief as the Court deems appropriate.

### Count IX - Invasion of Privacy

84. Plaintiff hereby incorporates all previous allegations as if set forth fully herein.

85. RIHA, acting through its agents, employees and/or servants, intruded upon Ms. Stewart's solitude and seclusion by disclosing false reasons for Ms. Stewart's discharge as well as other false information, which they falsely claimed was confidential information from her personnel file.

86. RIHA is liable under the doctrine of respondeat superior for this invasion of privacy.

87. As a result of these disclosures, Ms. Stewart has suffered from embarrassment, humiliation, loss of income, and other damages.

WHEREFORE, Plaintiff prays that this Court award Plaintiff compensatory and punitive damages in an amount to be determined at trial, as well as reasonable attorneys' fees and costs, and such additional relief as the Court deems appropriate.

## Count X - Tortious Interference With Contractual Relations

88. Plaintiff hereby incorporates all previous allegations as if fully set forth herein.

89. Defendant, RIHA, acting at the instigation of various members of its Board, tortiously interfered with Plaintiff's employment contract by maliciously and wrongfully inducing RIHA to terminate its employment contract with Ms. Stewart and wrongfully discharge Plaintiff from her employment.

90. Defendant employed fraudulent and other improper means in connection with such interference. Defendant acted with actual malice in connection with the actions alleged herein.

91. As a result of Defendant's tortious interference, Ms. Stewart has sustained damages including loss of employment, loss of income and benefits, emotional distress, and other damages.

WHEREFORE, Plaintiff prays that this Court award Plaintiff compensatory and punitive damages; reasonable attorneys' fees and costs, and such additional relief as the Court deems appropriate.

Plaintiff hereby demands a trial by jury on all counts.

This 10th day of January 2002.

Respectfully submitted,
Mary Elizabeth Stewart

By: *[signature: David C. Lindsay]*

Randall D. Avram
David C. Lindsay
**HUNTON & WILLIAMS**
Attorneys at Law
One Hanover Square, Suite 1400
421 Fayetteville Street Mall
Raleigh, NC 27602
(919) 899-3000
Fax (919) 833-6352

James P. Naughton
Sara L. Berg
**HUNTON & WILLIAMS**
Attorneys at Law
SunTrust Center, Suite 1000
500 E. Main Street
Norfolk, VA 23510
(757) 640-5300
Fax (757) 625-7720

Counsel for Mary Elizabeth Stewart