FILED
FEB 2 5 2002
DAVID W. DANIEL, CLERK
US DISTRICT COURT, EDNC
BY _____ DEP. CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
CASE NO. 2:02-CV-1-BO(1)

MARY ELIZABETH STEWART,

    Plaintiff,

v.

ROANOKE ISLAND HISTORICAL
ASSOCIATION, INC.,

    Defendant.

ANSWER

NOW COMES Defendant Roanoke Island Historical Association, Inc. ("the Association") and hereby answers the allegations in Plaintiff's Complaint as follows:

## PRELIMINARY STATEMENT

1. This is not an averment that requires an admission or denial but the Association acknowledges Plaintiff has filed a multi-faceted suit seeking recovery on a number of different grounds. The Association counters by preliminarily stating that this suit is an unfortunate attempt by a disgruntled former Association employee to attack and injure the numerous people that ensure the continued successful production of "The Lost Colony." As will be shown, Plaintiff's misguided complaint includes numerous misstatements of fact and omissions of material facts that would more fully explain how the Association's Board of Directors properly addressed hearsay-based complaints of inappropriate conduct by employees and agents of the Association. Additionally, a number of Plaintiff's legal claims are untimely or otherwise infirm, as will be shown. It is also noted that after its investigation into the matter, the Equal Employment Opportunity Commission found insufficient support for Plaintiff's claims to



establish any legal violation by the Association in connection with the conduct Plaintiff complains of.

## JURISDICTION AND VENUE

2. Admitted.

3. Admitted.

4. Admitted.

5. Admitted.

## ADMINISTRATIVE PREREQUISITES

6. Denied that Plaintiff has timely filed a charge of discrimination in connection with her "hostile work environment" claim, admitted that Plaintiff has timely filed a charge of discrimination in connection with her "retaliation" claim, and denied that Plaintiff has timely filed a charge of discrimination in connection with her pregnancy-based "sexual harassment" claim.

7. Denied, although it is admitted Plaintiff filed this suit within ninety (90) days of her receipt of the Dismissal and Notice of Rights letter in which the EEOC found insufficient support for Plaintiff's claims to establish a violation of federal law.

## STATEMENT OF FACTS

8. Generally admitted, although upon information and belief, Plaintiff's actual dates of employment were from March 25, 1999 until February 2, 2001. Although she was asked to do so, Plaintiff refused to assist in the transition process by working in the week starting February 5, 2001.

9. Admitted.

10. Deny knowledge or information as to what Plaintiff was told in these respects, but it is generally admitted Dr. Salgado reported these allegations to the Association's Board Chair Ellen Newbold. It is further admitted that Dr. Salgado's report of the allegations included the year of the alleged events, which were in 1997 or 1998 and also the fact that the "male employee" identified was no longer performing in the play and was ultimately unwilling to come forward to support or verify these hearsay-laden reports. The Association's Board tried to reach out to this alleged discriminatee and interview him but was told by Dr. Salgado that "no, he's unwilling to do that" or words to that effect.

11. Deny knowledge or information as to what Plaintiff was told in these respects.

12. Deny knowledge or information as to what Plaintiff was told in these respects.

13. Deny knowledge or information as to what Plaintiff was told in these respects, but admitted Dr. Salgado reported the second of these two allegations to the Association. It is further admitted that the "employee" identified was ultimately unwilling to come forward to support or verify these hearsay-laden reports.

14. Deny knowledge or information as to what Plaintiff was told in this respect but it is admitted Dr. Salgado advised the Association the "male employee" was "afraid to come forward" or used words to that effect.

15. Deny knowledge or information concerning what discussions Mr. Long had with the employee or what "instructions" he gave the employee and deny all other allegations that are not specifically admitted, but it is generally admitted that photographs of an RIHA employee were taken by Mr. Long in connection with the preparation of a calendar and that certain of those photos contained the RIHA employee in various stages of undress, and it is further admitted that RIHA immediately addressed this situation as identified below.

3

16. Deny knowledge or information as to what Dr. Salgado was told in these respects, deny all other allegations that are not specifically admitted, and admit Dr. Salgado ultimately addressed Mr. Long in connection with these "revealing and inappropriate photographs" by noting that he had "unthinkingly compromised the integrity of The Lost Colony, putting it at risk." Dr. Salgado addressed Mr. Long at the specific direction of the Association's Executive Committee, which was seeking to eliminate any future occurrences of the same type. No future reports of this type arose.

17. Denied. The exact parameters of "these allegations" are not clear but then – Association Board Chair Ellen Newbold did address Mr. Long and "Mr. B" with the allegations contained in paragraph 10 of the Complaint and both Mr. Long and "Mr. B" emphatically and categorically denied the accusations. After receiving categorical denials of the allegations contained in paragraph 10 of the Complaint, Ms. Newbold advised Plaintiff and Dr. Salgado that the complainant must come forward for the Board to consider the matter any further. Dr. Salgado advised that the complainant <u>would</u> come forward and an interview date was set up but the complainant failed to show. No further action was taken in connection with these specific allegations. As for the allegations of "revealing and inappropriate photographs" referenced in paragraphs 15 and 16, Dr. Salgado herself admonished Mr. Long that specific procedures for photographing cast members must be followed and the "evidence" was secured at the Association's attorneys offices for safe-keeping.

18. Generally denied and deny knowledge of information as to what Mr. Long's assistant did or did not do or say. It is admitted, however, that Plaintiff did complain of her husband being propositioned by Mr. Long but delayed reporting this alleged incident until the middle of August, 2000 – some four months after it allegedly occurred. Plaintiff was asked why

4

RALEIGH 404713v1

Case 2:02-cv-00001-BO   Document 6   Filed 02/25/02   Page 4 of 15

she was the one reporting this alleged incident and she reported that her husband refused to come forward himself. Plaintiff was then reminded of the Association's position that hearsay-based complaints in which the complainants themselves were unwilling to use the harassment reporting policy were insufficient and would not trigger an investigation by the Association.

19. Admitted that Plaintiff reported a solicitation of Plaintiff's husband to Ms. Newbold and Mr. Seawell and further admit the Association responded as identified above in the response to paragraph number 18. It is also admitted that Ms. Stewart brought framed pictures of male activity to show Ms. Newbold and Mr. Seawell and was asked "where did you get these?" Plaintiff responded that these pictures were "hanging on the wall at my house" due to the fact that the "male employee" identified as such in paragraph 10 was residing at Plaintiff's home as a tenant and these pictures belonged to the "male employee."

20. Denied.

21. Denied.

22. Denied.

23. Denied.

24. Denied.

25. Denied.

26. Denied. Dr. Salgado resigned on August 18, 2000 and forwarded the Association a resignation letter that made no reference to her protesting anything, including the purported "sexually hostile work environment" that allegedly existed.

27. Deny knowledge or information as to what the Association employees asked of Plaintiff, but generally admit that a meeting was held with Ms. Harrell, Ms. Newbold, Plaintiff,

and various other Association employees to discuss going forward in the absence of Dr. Salgado, who had resigned shortly before.

28. Generally admitted, but deny that addressing employees' complaints about "a sexually hostile work environment" was the purpose of the September 11, 2000 meeting. It is further admitted that the real purpose of the meeting was to create a plan for moving forward and the airing of employee complaints about the manner in which the operation was run by the management and the Board was one of the topics addressed.

29. It is generally admitted that the RIHA employees complained about Mr. Long's "abusive behavior" at the September 11, 2000 meeting, and it is further admitted that Plaintiff raised concerns with the previously reported, but wholly unsubstantiated, claim of sexual harassment by Mr. Long. All of the other allegations are denied. It is further admitted that Plaintiff was instructed yet again at this meeting that claims of harassment where the alleged harassee was unwilling to come forward had already been addressed and no remedial action would be taken or was warranted unless a harassee came forward to report the actual conduct.

30. It is generally admitted that neither Ms. Harrell nor Ms. Newbold took any remedial or "effective action" after meeting with the employees. All of the other allegations are denied. It is further admitted that Mr. Long received a new employment contract for the 2001 production year and also that at this meeting Ms. Harrell reminded the staff that they when they had complaints about Mr. Long or any other supervisory-level employee they should immediately contact their supervisor if they are experiencing harassing conduct in the workplace.

31. Admitted that Plaintiff and other staff members were asked to furnish the Board with descriptions of their jobs, but denied as to the remaining allegations. It is further admitted that Ms. Newbold and Ms. Harrell, both mothers of children themselves, may have asked

6

Plaintiff how her pregnancy was coming as an indication of concern for Plaintiff and her unborn child and also to identify anticipated scheduling issues that the Association would need to accommodate, but there was no other purpose for the questions. It is further acknowledged the Association has and had numerous pregnant employees whom it accommodated and continued to employ after the employees gave birth. Additionally, all employees at this meeting were asked what their intentions were in connection with future employment with the Association, with Ms. Harrell and Ms. Newbold seeking to ascertain the status of the staff after Dr. Salgado's resignation.

32. Denied in part, admitted in part. The Association's Board decided after Dr. Salgado's resignation that it needed two employees serving where one CEO served previously. The job descriptions were not created until the September 16th, 2000 Board meeting. Thus, the job descriptions were not created until <u>after</u> the above-referenced September 11 personnel meeting, but the decisions to reorganize and create the new job titles was made <u>before</u> the September 11 meeting. The implication intended by the Complaint that there was a causal relationship between Plaintiff's complaints and the reorganization is denied.

33. Denied.

34. Admitted.

35. Denied, although it is admitted that "no other RIHA employee was required to reapply for his or her current job." That said, neither was Plaintiff. Plaintiff was asked to apply for the new position of Executive Production Coordinator, with increased job responsibilities and an increase in annual compensation of approximately $20,000.00 from Plaintiff's former position.

7

36. Deny knowledge or information as to what "another employee" was told. Denied that a "board member" made the same statement at an October 2000 staff meeting.

37. It is admitted that Plaintiff had not "mishandled any personnel decisions" and that she was told her job had been eliminated, deny knowledge or information as to what "other RIHA staff members" thought of Plaintiff, and deny the remaining allegations. As for what Plaintiff had been told by RIHA, Ms. Harrell specifically told Plaintiff in connection with the reorganization that "you have the inside track on this new job, Beth, and you have an excellent opportunity to prove the capability to accept these increased responsibilities," or using words to that effect.

38. Admitted, except the Board did not "purport" to do anything.

39. Denied, although it is admitted Plaintiff and her husband thought this was true because Ty Stewart approached Ms. Dresken in November and suspiciously asked her what she was doing in Manteo. Ms. Dresken replied that she had "moved back to Roanoke Island" and had "applied for a job with the Association." Mr. Stewart went on to admit that "if my wife, Beth, doesn't get this job, she'll have nowhere to work and we'll have to leave Roanoke Island."

40. Denied.

41. Admitted, except Plaintiff was offered to opportunity to work an additional week beginning February 5, 2001 and she refused.

42. Deny knowledge or information what confidential information Plaintiff is referring to or to what she refers.

43. Denied, although it is admitted Plaintiff created and forwarded a document purportedly identifying over 1200 hours in "compensatory time" and requested payment for the same.

8

RALEIGH 404713v1

Case 2:02-cv-00001-BO   Document 6   Filed 02/25/02   Page 8 of 15

44. Denied as stated, but Ms. Dresken admits she was of the opinion that Ms. Stewart was too inexperienced to "run the production" and she may have shared this opinion with Mr. Charon.

45. Denied as stated, but Mr. Walker admits he was of the opinion that Ms. Stewart was too inexperienced to "run the production" and that Plaintiff may have made a tactical mistake by aligning herself too closely with Dr. Salgado late in her tenure and Mr. Walker further admits that he may have shared this opinion with Mr. Bender.

46. Denied.

47. Denied.

## COUNT I – SEXUAL HARASSMENT – HOSTILE WORK ENVIRONMENT

48. Defendant incorporates its previous responses.

49. Denied.

50. Denied.

51. Denied.

## COUNT II – RETALIATION

52. Defendant incorporates its previous responses.

53. Denied.

54. Denied.

## COUNT III – SEXUAL DISCRIMINATION

55. Defendant incorporates its previous responses.

56. Denied.

57. Denied.

58. Denied.

9

RALEIGH 404713v1
Case 2:02-cv-00001-BO   Document 6   Filed 02/25/02   Page 9 of 15

## COUNT IV – WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

59. Defendant incorporates its previous responses.

60. Admitted.

61. Denied.

62. Denied.

## COUNT V – BREACH OF EMPLOYMENT CONTRACT

63. Defendant incorporates its previous responses.

64. Admitted.

65. Denied.

66. Denied.

67. Denied

68. Denied.

## COUNT VI – DEFAMATION

69. Defendant incorporates its previous responses.

70. Denied.

71. Denied.

72. Denied.

73. Denied.

74. Denied.

## COUNT VII – FRAUD

75. Defendant incorporates its previous responses.

76. Admitted.

77. Denied.

10

78. Denied.

79. Denied.

80. Denied.

81. Denied.

## COUNT VIII – VIOLATION OF NORTH CAROLINA WAGE AND HOUR ACT

82. Defendant incorporates its previous responses.

83. Denied.

## COUNT IX – INVASION OF PRIVACY

84. Defendant incorporates its previous responses.

85. Denied.

86. Denied.

87. Denied.

## COUNT X – TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

88. Defendant incorporates its previous responses.

89. Denied.

90. Denied.

91. Denied.

### FIRST FURTHER DEFENSE

Plaintiff's First, Third, Ninth, and Tenth Causes of Action should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

### SECOND FURTHER DEFENSE

Plaintiff's claims are barred to the extent she failed to mitigate her damages.

## THIRD FURTHER DEFENSE

Plaintiff's claims are barred to the extent she failed to meet the applicable statute of limitations.

## FOURTH FURTHER DEFENSE

To the extent Plaintiff was exposed to sexual harassment, which Defendant denies, Defendant took prompt and adequate remedial action which was reasonable calculated to end the harassment.

## FIFTH FURTHER DEFENSE

Defendant exercised reasonable care to prevent sexually harassing behavior by its employees. Furthermore, Plaintiff unreasonable failed to take advantage of the preventive and corrective opportunities provided to her by Defendant. Defendant is therefore not subject to vicarious liability for the alleged sexual harassment of her by a supervisory employee.

## SIXTH FURTHER DEFENSE

Plaintiff does not have standing to complain of an allegedly sexually hostile environment that she does not experience but is only told about through hearsay statements.

## SEVENTH FURTHER DEFENSE

Plaintiff's claims under Title VII are barred to the extent that the allegations in the Complaint exceed the scope of the charges filed with the EEOC.

## EIGHTH FURTHER DEFENSE

Plaintiff's claims under Title VII are barred to the extent she failed to file a charge with the EEOC within 180 days of an allegedly unlawful act.

## NINTH FURTHER DEFENSE

While denying Plaintiff is entitled to any damages at all, Defendant exercised reasonable care to protect against unlawful discrimination by its employees and to correct promptly any unlawful discriminatory conduct; therefore, Plaintiff is not entitled to recover punitive damages from Defendant.

## TENTH FURTHER DEFENSE

Plaintiff's "hostile workplace" claim is barred by the doctrine of laches.

## ELEVENTH FURTHER DEFENSE

Defendant cannot tortiously interfere with its own contracts.

WHEREFORE, having fully answered the Complaint of the Plaintiff, Defendant prays the Court:

1. That Plaintiff have and recover nothing of the Defendant and that this action be dismissed with prejudice;

2. That the costs of the action, including reasonable attorney's fees, be taxed against the Plaintiff; and

3. For such other and further relief as the Court deems just and proper.

This \_\_25th\_\_ day of February, 2002.

WOMBLE CARLYLE SANDRIDGE & RICE, PLLC

*M. Todd Sullivan*

Charles A. Edwards, NCSB#: 13881
M. Todd Sullivan, NCSB#: 24554
2100 First Union Capitol Center
150 Fayetteville Street Mall
Post Office Box 831
Raleigh, NC 27602
Telephone: (919) 755-2159

Attorneys for Defendant

# CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the foregoing document upon the following persons by deposit in the United States Mail, first-class, postage prepaid, addressed as shown below:

Randall D. Avram
Hunton & Williams
421 Fayetteville Street Mall
One Hannover Square, Suite 1400
Raleigh, NC 27602

James P. Naughton
Hunton & Williams
SunTrust Center, Suite 1000
500 E. Main Street
Norfolk, VA 23510

This the 25th day of February, 2002.

_M. Todd Sullivan_
M. Todd Sullivan